BLOOM, Respondent, v. STANDARD PUB. CO., Appellant. (Supreme Court, Appellate Division, Fourth Department. April 10, 1897.) Action by Mortimer G. Bloom against the Standard Publishing Company. W. S. Andrews, for appellant. George McGowan, for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

FOLLETT, J. (dissenting). This action was begun January 16, 1895, to recover damages of the defendant for having published January 17, 1893, the following article: "Tapping of the Wires. Intimation and open accusations were made at last night's special meeting of the board of fire commissioners against Henry Reiley, chief engineer of the fire department, and by him, in turn, against citizens whose reputations have hitherto been unassailed, which indicate that for a long time the fire company located at engine house No. 1, opposite the city hall, including the chief and some of the other officers, had been open to serious suspicion. The entire membership

of engine company No. 1, except Assistant Chief Eckel and Patrick Gallagher, a hoseman, were brought before the board for examination. Of all these, it must be said that Chief Reiley made the poorest showing; assailing the Syracuse press, Commissioner Edward Kanaley, and M. G. Bloom, proprietor of the Bon Ton Millinery Store, in a way which was certainly uncalled for. Commissioner Hamilton S. White asked Chief Reiley: 'What is the story which was circulated about a year ago about the connection of the fire department with the cutting of the wires of the turf commission?' Chief Reiley replied: 'I don't know anything about it, though I heard Sullivan's name mentioned in connection with it.' 'Did you not have a bet on the same horse with Sullivan the same day the wire was tapped, and did you not have some trouble in getting your money,' asked Commissioner Kanaley? 'I did not go up with Sullivan and put money on the horse that Sullivan backed for $500, but I had my bet on it before Sullivan had his. I did not get the money I won, because they said there was some trouble about it. Any man who says that I was implicated in the cutting of that wire is a liar.' Before the chief left the room, he turned to Commissioner Kanaley and said: 'You have intimated that I knew something about this wire-tapping. I heard at the time that two men from New York cut the wires. One of them is the man who keeps the Bon Ton Millinery Store. It was well known at the time that he brought up two men from New York for this purpose.' " January 16, 1893, the board of fire commissioners of the city of Syracuse held a meeting at which the conduct of Henry Reiley, chief engineer, and several members of the fire department, was examined into. One of defendant's reporters was present at the meeting and wrote the article. The jury found, upon conflicting evidence, that Chief Engineer Reiley did not mention the name of M. G. Bloom during his examination; and upon this finding it was held that the article was not privileged under section 1907 of the Code of Civil Procedure, it not being "a fair and true report of * * * official proceedings." The plaintiff was entitled to recover compensatory damages (all damages sustained by him) and exemplary or punitive damages (damages inflicted for the punishment of wrongdoers) in case it was shown (1) that the publication was actuated by malice in fact; or (2) that the article was negligently, carelessly, or recklessly published. Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701; Warner v. Publishing Co.. 132 N. Y. 181, 30 N. E. 393. It is not alleged in the complaint that the defendant negligently, carelessly, or recklessly published the article, nor is it alleged in the answer that the defendant exercised due care in respect to the publication; and the absence of this issue in the pleadings may justify the exclusion of the evidence offered by the defendant that the proceedings were reported by a reporter of experience, who had previously thereto been found to be accurate. However, the case was not tried on the theory that the publication was negligent, careless, or reckless, but on the theory that it was malicious. This issue the plaintiff failed to sustain. The article furnishes not the slightest evidence of malice in fact, but, on the contrary, it shows an entire absence of malice in fact, which is the equivalent of ill will. It is stated in the article that the chief engineer assailed "citizens whose reputations have hitherto been unassailed, * * * and that Chief Reiley made the poorest showing; assailing the Syracuse press, Commissioner Edward Kanaley, and M. G. Bloom, proprietor of the Bon Ton Millinery Store, in a way which was certainly uncalled for." It seems to me that the article conclusively shows that neither the writer nor the publisher was actuated by malice or ill will towards the plaintiff. The learned trial court expressly and correctly held that there was no evidence that the defendant or the writer of the article was actuated by malice or ill will. Nevertheless the court charged that the jury might award "smart money,—punitive damages." There being no aggravating circumstances connected with the article or its publication, and there being no evidence of malice in fact, and no issue or evidence that the publication was recklessly made, the plaintiff was entitled to recover only compensatory damages; and the charge that the jury might, in its discretion, award punitive damages or smart money (which instruction was excepted to) was error. No attempt is made to lay down in this opinion a general rule in respect to punitive damages which shall be applicable to all actions for libel. It may be that cases have arisen or will arise in which the circumstances under which the publication is made are such, and the aggravation so great, that punitive damages may be recoverable in the absence of evidence of malice in fact. In case an article is libelous on its face, malice in law is presumed, and the presumption is an irrebuttable one; and the plaintiff is entitled to be compensated in damages for all his losses, injured feelings, and loss of reputation. But malice in fact—ill will towards the plaintiff—is quite a different kind of malice from legal malice, which is always inferred. The character of a defamatory article may be such as to justify the court in holding or the jury in finding that it was written or published with malicious motives, or that it was published with such motives may be shown by evidence aliunde. Bergmann v. Jones, 94 N. Y. 51, is sometimes cited as authority for the position that punitive or exemplary damages—not solely for the compensation of the plaintiff, but for the punishment of the wrongdoer—may be recovered in all cases of libel; that is, that legal malice, even though it be expressly conceded that there is no malice in fact, is sufficient to authorize the punishment of the defendant by awarding punitive damages. That case does not seem to me to support the proposition. There was a question of fact in that case, arising from the face of the article and the evidence aliunde, as to whether malice in fact existed. In Warner v. Publishing Co., 132 N. Y. 181, 30 N. E. 393, the court was asked to charge, in a case where only legal malice was shown, that damages for injured feelings, mental or bodily suffering, could not be recovered, which was refused, and was sustained. This was clearly correct. In this case the defendant simply published the report of an official proceeding occurring in the city in which the paper was published, which did not charge the plaintiff with wrongdoing, but stated that he was charged by a person under examination for wrongdoing with having committed the offense with which the person

being examined was charged, and in the same article it is stated that the charge against the plaintiff was uncalled for. The ruling that the evidence warranted the jury in punishing the defendant by awarding damages beyond those which the plaintiff had sustained was not justified by the facts of this case. The judgment and order should be reversed, and a new trial granted, with costs to abide the event.